# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ESAM SAMARA,**

       **Plaintiff,**

**v.**                                                               **Case No:   6:14-cv-2111-Orl-31KRS**

**INTERNATIONAL FOOD CLUB, INC.,**

       **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **JOINT MOTION TO REVIEW AND APPROVE PROPOSED FLSA SETTLEMENT AND DISMISS ACTION WITH PREJUDICE (Doc. No. 28)**
>
> **FILED:**      **August 24, 2015**
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I. BACKGROUND.

On December 24, 2014, Plaintiff Esam Samara ("Samara") filed a complaint against Defendant International Food Club, Inc. ("International Food"), raising claims for (1) failure to pay a minimum wage and overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and (2) failure to pay the minimum wage to which he was entitled under Article X, Section 24 of the Florida Constitution. Doc. No. 1. On August 24, 2015, the parties filed a joint motion for settlement approval, requesting that the Court (1) approve the

settlement as a fair and reasonable resolution of a bona fide dispute under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982); (2) dismiss the action with prejudice; and (3) reserve jurisdiction to enforce the terms of the settlement, should such enforcement be necessary. Doc. No. 28. The parties attached an unsigned copy of the settlement agreement to the motion. Doc. No. 28-2.

The motion has been referred to me for issuance of a Report and Recommendation, and the matter is now ripe for consideration.

**II.    DISCUSSION.**

In *Lynn's Food*, the United States Court of Appeals for the Eleventh Circuit explained that claims for unpaid compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1352–55. Under *Lynn's Food*, therefore, a court may only enter a judgment approving a settlement after it determines that the judgment is stipulated, *see Nall v. Mal Motels, Inc.*, 723 F.3d 1304, 1308 (11th Cir. 2013), and that the settlement is fair and reasonable, *see Dees v. Hydradry*, 706 F. Supp. 2d 1227, 1240–41 (M.D. Fla. 2010).

*A.    Terms of the Settlement.*

International Food agrees to pay a total of $18,000.00 to Samara and his counsel. Doc. No. 28-2, at 1 ¶ 2. Within ten days of a court order approving the settlement, International Food will pay Samara with a "payroll style check" in the gross sum of $1,500.00, less all applicable deductions and withholdings, and a "non-payroll style check" in the gross and net sum of $1,500.00. *Id.* at 1 ¶ 2(a)(i)–(ii). International Food will also deliver to Samara's counsel a non-payroll style check in the gross and net sum of $3,000.00. *Id.* at 1 ¶ 2(a)(iii). Within thirty days of the order,

International Food will pay Samara with another payroll style check in the gross sum of $1,500.00, less all applicable deductions and withholdings, and another non-payroll style check in the gross and net sum of $1,500.00.  *Id.* at 1 ¶ 2(b)(i)–(ii).  International Food will also deliver to Samara's counsel another non-payroll style check in the gross and net sum of $3,000.00.  *Id.* at 1 ¶ 2(b)(iii).  Within sixty days of the order, International Food will pay Samara with a payroll style check in the gross sum of $1,000.00, less all applicable deductions and withholdings, and a non-payroll check in the gross and net sum of $1,000.00.  *Id.* at 1 ¶ 2(c)(i)–(ii).  International Food will further deliver to Samara's counsel a non-payroll style check in the gross and net sum of $4,000.00.  *Id.* at 1 ¶ 2(c)(iii).

In return, Samara agrees to a broad release of claims, *id.* at 3–4 ¶¶ 6–7, which will be discussed in more detail subsequently.

   B.   *Whether the Settlement Agreement Is a Compromise*.

In his answers to the Court's interrogatories, Samara averred that he was entitled to $6,817.25, plus an equal amount in liquidated damages.  Doc. No. 13, at 4; *see generally* 29 U.S.C. § 216(b).  Under the settlement agreement, Samara will receive $8,000.00 from International Food.  Because the settlement agreement will provide Samara less than the amount to which he is entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food*.

   C.   *Whether the Settlement Is a Fair and Reasonable Resolution of a Bona Fide Dispute*.

Because Samara has compromised his claims, I must evaluate whether the settlement may be approved as a fair and reasonable resolution of bona fide dispute.  I discern three issues that undermine settlement approval.

First, a court cannot scrutinize a settlement for fairness unless the parties provide a "full and adequate disclosure of the terms of the settlement, including the factors and reasons considered in

reaching same and justifying the compromise of the plaintiff's claims." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Saunders v. Daytona Beach Kennel Club, Inc.*, No. 6:11-cv-1117-Orl-TBS, 2012 U.S. Dist. LEXIS 104773, at *3 (M.D. Fla. July 27, 2012). While the parties are not required to disclose every aspect of their negotiations, they "must provide enough information for the court to examine the bona fides of the dispute." *Dees*, 706 F. Supp. 2d at 1241. In *Dees*, the court described the parties' obligation as follows:

> The parties' motion (or presentation at a hearing) must describe the nature of the dispute (for example, a disagreement over the coverage, exemption, or computation of hours worked or rate of pay) resolved by the compromise. . . . The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages. If the parties dispute the computation of wages owed, the parties must provide each party's estimate of the number of hours worked and the applicable wage. In any circumstance, the district court must ensure the bona fides of the dispute: implementation of the FLSA is frustrated if an employer can extract a disproportionate discount on FLSA wages in exchange for an attenuated defense to payment.

*Id.* at 1241–42. The present motion largely fails to address the factors justifying the compromise, other than saying that the parties dispute liability, desire to avoid the costs and uncertainty of further litigation, and agree that a bona fide dispute exists. Doc. No. 28, at 1–3 ¶¶1–2, 6–7. Such representations fail to provide the Court sufficient information upon which it could evaluate the bona fides of the dispute.

Second, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam).[1] As this Court has noted in *Bonetti*,

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the

---

[1] Unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

> terms of settlement, including factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.  However, if the parties can only agree as to the amount to be paid to the plaintiff, the Court will continue the practice of determining a reasonable fee using the lodestar approach.

715 F. Supp. 2d at 1228.  The agreement provides that of the $18,000.00 settlement sum, $10,000.00 will be paid to Samara's counsel.  Doc. No. 28-2, at 1 ¶ 2.  The parties, however, have not stated that this amount was negotiated separately and without regard to the amount Samara agreed to accept.  Counsel for Samara has also failed to submit any evidence establishing that the amount is reasonable under the lodestar approach.  *Id.*  Therefore, under *Bonetti*, the parties have not presented sufficient information for the Court to determine that Samara's recovery has not been tainted by a conflict of interest.

Finally, because plaintiffs can only compromise FLSA claims on the basis of a "dispute over FLSA provisions," gratuitous concessions typically have no place in FLSA settlements.  *See Bright v. Mental Health Res. Ctr., Inc.*, No. 3:10-cv-427-J-37TEM, 2012 U.S. Dist. LEXIS 33929, at *17 (M.D. Fla. Mar. 14, 2012); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348–49 (M.D. Fla. 2010).  For pervasive general releases to be properly included in FLSA settlements, they must be supported by independent and meaningful compensation.  *Bright*, 2012 U.S. Dist. LEXIS 33929, at *18–20; *Moreno*, 729 F. Supp. 2d at 1352; *see also Biscardi v. Fla. Sport & Recreation Network, LLC*, No. 6:14-cv-1632-Orl-41KRS, 2015 U.S. Dist. LEXIS 54857, at *4–5 (M.D. Fla. Mar. 25, 2015), *adopted by* 2015 U.S. Dist. LEXIS 54850 (M.D. Fla. Apr. 27, 2015).

Although the title of the settlement agreement suggests that it contains a "limited FLSA release," Doc. No. 28-2, at 1, the plain language of the agreement reveals a very different reality. The relevant release provisions are as follows:

> The Plaintiff in consideration of this Agreement and the mutual promises set forth herein, and for other good and valuable consideration received from or on behalf of the Company, receipt whereof is hereby acknowledged, hereby *releases and forever discharges* the Company and the Company's parent companies, subsidiaries, divisions, affiliates, and related companies, and any predecessors, successors, heirs, executors, administrators, assigns, shareholders (direct or indirect), directors, officers, employees, agents, and attorneys (and the shareholders (direct or indirect), directors, officers, employees, agents, and attorneys of such parent companies, subsidiaries, affiliates, and related companies), and all persons acting by, through, under, or in concert with any of them (hereinafter defined separately and collectively as the "Defendant Releasees"), from any and all claims asserted, or which could have been asserted, in the Civil Action, under the Fair Labor Standards Act of 1938, as amended, and Florida's Constitution, Art. X § 24, and any and all claims for monetary recovery, including, but not limited to, back wages or liquidated damages, attorneys' fees, experts' fees, disbursements, and costs under the Fair Labor Standards Act of 1938, as amended, and Florida Constitution, Art X § 24, which, against the Defendant Releasees, Plaintiff or his heirs, executors, administrators, successors, and assigns ever had, now has, or hereafter can, will, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world to the date Plaintiff executes this agreement.
>
> . . . .
>
> The Plaintiff understands and acknowledges that there may be facts or information which he does not know or suspects to exist in his favor at the time he executes this Agreement, and he agrees that this Agreement is intended to and does extinguish any and all claims he might have based on such facts or information.

Doc. No. 28-2 ¶¶ 6–7.

The releases contained in the settlement agreement are sweeping. They encompass "all claims for monetary recovery . . . from the beginning of the world to the date Plaintiff executes this agreement." *Id.* ¶ 6. While the above language indicates that the release *includes* claims under the Fair Labor Standards Act and Article X, Section 24 of the Florida Constitution, it also explicitly provides that it *is not limited to* such claims. *Id.* This fact is reinforced when the agreement

subsequently states that Samara intends to — and does — extinguish "any and all claims" that he might have based on unknown or suspected facts or information. *Id.* ¶ 7. This release, while overbroad even with respect to International Food, is not limited merely to that entity. It also includes successors and heirs, who are incapable of identification until some future time, and releases all categories of claims against them as well. By its plain language, this pervasive release even purports to extend to any claims of Samara's heirs, executors, administrators, successors, and assigns, regardless of whether those claims were ever personal to Samara. *Id.* ¶ 6. The release provisions are overbroad and render the agreement unreasonable.

For all these reasons, the parties have not established that the settlement is a fair and reasonable resolution of a bona fide dispute under the FLSA.

## III.  RECOMMENDATION.

In light of the foregoing, I respectfully **RECOMMEND** that the Court **DENY** the Joint Motion to Review and Approve Proposed FLSA Settlement and Dismiss Action with Prejudice (Doc. No. 28).

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual findings and legal conclusions.

Recommended in Orlando, Florida on September 21, 2015.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy